IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| Dung Thi Pham, | § | Case No. 05-91647 |
|   Debtor. | § | |
| | | |
| United States Trustee | § | |
|   Plaintiff | § | |
| v. | § | Adversary Pro. 06-3452 |
| Dung Thi Pham, | § | |
|   Pham. | § | |

## **MEMORANDUM OPINION**

Dung Thi Pham filed a chapter 7 bankruptcy petition on October 14, 2005. Pham was represented by attorney Lan Q. Ngo.

### Procedural Background and Call to Trial

On June 30, 2006, the United States trustee timely filed an adversary proceeding objecting to Pham's chapter 7 discharge.

This adversary proceeding was called to trial on October 10, 2006. Exhibits 1-63, 67 and 68 were offered and admitted without objection. Exhibits 64 and 65 were offered. The Court declined to admit exhibits 64 and 65. The United States trustee rested on the exhibits without calling any witnesses.

Pham's counsel announced that he could not locate his client. He was excused from the courtroom to look for the client, but returned shortly thereafter without his client. Pham's counsel then requested additional time. That request was denied. Pham had earlier sought a last-minute trial continuance and that request was denied at docket #17.

Pham's counsel offered no additional exhibits. He called no witnesses.

Accordingly, the only evidence before the Court is documentary. Pham's defense is that Pham did not understand the questions set forth in the schedules and in the statement of financial affairs. Therefore, he claims, there could not have been an intent to defraud. There is no evidence to support that position. Pham was represented by competent counsel. The Court declines to assume (without supporting evidence) that counsel failed to meet his responsibility to inform his client as to the meaning and importance of the schedules and the statement of financial affairs.

## Legal Standard

The United States trustee bears the burden of establishing all elements that prevent the debtor's discharge.  *In re Pratt,* 411 F.3d 561 (5th Cir. 2005).  In this adversary proceeding, the United States trustee seeks to deny the debtor's discharge based on the following statutory provisions:

**Section 727(a)(4)(A).**

Pursuant to § 727(a)(4)(A), the debtor's discharge must be denied if "the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  As set forth below, the debtor's schedules and statement of financial affairs contained numerous omissions.

In 2001, the Fifth Circuit explained how a Bankruptcy Court should review the schedules and statements filed in a bankruptcy case:

> It is undisputed that Appellant made materially false statements in his schedules and statement of financial affairs and amended them only after his deposition confirmed the falsehood. When confronted with Appellee's motion, Appellant remained silent and did not present any facts creating genuine issues of material fact. In light of these circumstances, we agree with the district court that Appellant made the false statements with fraudulent intent. *See Economy Brick Sales, Inc. v. Gonday (In re Gonday)*, 27 B.R. 428, 432 (Bankr.M.D.La.1983) ("[T]he cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth [to support] fraudulent intent."); *Oldendorf v. Buckman*, 173 B.R. 99, 105 (E.D.La.1994). As we have noted, "[f]ull disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential." *Beaubouef*, 966 F.2d at 179.

*In re Sholdra,* 249 F.3d 380, 383 (5th Cir. 2001).

Subsequent amendments to bankruptcy schedules and statements—without more—do not negate an actual violation of the ant-fraud provisions of § 727(a)(4)(A).  *Id.* at 382-83.

When the schedules and statements are replete with omissions and inconsistencies, the schedules and statements themselves evidence a "pattern of disregard for the truth that supports fraudulent intent.  *In re Dupre,* 145 Fed. Appx. 855, 856 (5th Cir. 2005).

Nevertheless, the schedules and statements need not be completed with perfection.  *In re Tomasek,* 175 Fed. Appx. 662 (5th Cir. 2006).  The Court can consider reasonable explanations offered by the debtor with respect to errors in the schedules and statements.  *Id.*

**Section 727(a)(3).**

Pursuant to § 727(a)(3), the debtor's discharge must be denied if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

Pham's records need not contain "full detail" but "there should be written evidence" of Pham's financial condition. *In re Dennis,* 330 F.3d 696, 703 (5th Cir. 2003). The United States trustee must specify what records are missing or why their absence prevents an understanding of Pham's financial condition. *Id.* at 703.

**Section 727(a)(5).**

Pursuant to § 727(a)(5), the debtor's discharge must be denied if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5).

To prevail under § 727(a)(5), the United States trustee must first establish a loss or deficiency of assets. *In re Cacioli,* 2006 WL 2588038 (2nd Cir. Sept. 06, 2006). The debtor may rebut any such showing by offering a reasonable explanation. *Id.* If the explanation convinces the fact finder that the debtor had not hidden assets, no further corroboration is required. *Id.*

## Factual Stipulations and Admissions

On September 29, 2006, Pham and the United States trustee filed a joint pretrial statement. In that pretrial statement, Pham and the trustee admit to the following:

1. On or about October 14, 2005, Pham filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code.

2. W. Steve Smith was appointed to serve as the chapter 7 trustee.

3. The meeting of creditors held pursuant to 11 U.S.C. § 341(a) has not been concluded.

4. Pham has not received a discharge to date.

5. Pham filed original Schedules (doc. no. 9) on or about November 1, 2005, and certified under penalty of perjury that the information disclosed therein was true and correct. Pham did not file a Schedule A-Real Property. In Schedule B, Pham disclosed (i) $100 in cash, (ii) $5,945.37 in a checking account at Compass Bank, (iii) wearing apparel valued at $5,000,(iv) furs and jewelry valued at $7,000, and (v) a 2003 Mercedes-Benz valued at $46,200. Pham did not disclose any interest in household goods and furnishings, books and music recordings, and

IRA or other pension and profit sharing plans. Pham claimed an exemption for all assets disclosed, except cash on hand and in the checking account. Pham disclosed unsecured debts of $456,228, but not any secured or priority claims.

6.  Pham filed amended Schedules (doc. no. 16) on or about April 12, 2006, and certified under penalty of perjury that the information disclosed therein was true and correct. Pham filed Schedule A, which disclosed no interest in real property. In amended Schedule B, Pham, in addition to other property listed in her original Schedule B, disclosed her interest in household goods and furnishings of $500, books and music recordings of $100, and Robeco and Ameritrade investment funds of about $14,836. Pham filed amended Schedule C and claimed an exemption for all assets disclosed. Pham disclosed secured debts of $79,271, unsecured debts of $137,424, but no priority claims. Among her secured debts, Pham disclosed a claim of $21,695 held by Ben Bridge Jewelers and secured by an 18K Rolex watch, and one of $17,936 held by Neiman Marcus and secured by a Cartier watch. Pham intends to further amend her schedules with respect to these items.

7.  Pham filed an original Statement of Financial Affairs (doc. no. 9) on or about November 1, 2005, and certified under penalty of perjury that the information disclosed therein was true and correct. Pham did not disclose any (i) payments on antecedent debt, (ii) repossessions, foreclosures, or returns, (iii) gifts or charitable contributions, (iv) losses from fire, theft, other casualty or gambling, (v) transfers, (vi) financial accounts and instruments closed, sold or otherwise transferred, or (vii) businesses, except for Pho 4 Seasons, a restaurant.

8.  Pham filed an amended Statement of Financial Affairs (doc. no. 16) on or about April 12, 2006, and certified under penalty of perjury that the information disclosed therein was true and correct. Pham did not disclose any (i) payments on antecedent debt, (ii) repossessions, foreclosures, or returns, except the repossession of the 2003 Mercedes Benz, (iii) gifts or charitable contributions, (iv) losses from fire, theft, other casualty or gambling, (v) transfers, and (vi) financial accounts and instruments closed, sold or otherwise transferred, except the closure of the business account at Southwestern National Bank. Pham intends to file further amendments.

9.  According to her testimony at the Rule 2004 examination, Pham currently receives from Thuy G. Pham ("Thuy"), her son, about $500 to $1,000 per month. She resides at 1503 Pine Creek, Pearland, Texas, where she receives room and board from Thuy.

10.  At the meetings of creditors, Pham testified that she (i) transferred her interest in a 1999 Toyota Four Runner to Phuong Vo for $3,000 in September 2005, (ii) transferred her interest in an 18K Rolex watch to Jennifer Vong in satisfaction of an unsecured debt of $15,000, and (iii) did not own any interest in real property in the year prior to the Petition Date. Pham also testified that she did not personally receive any monies as a result of the transfer of Inwood Center Cleaners.

11.  Prior to coming to Houston, Texas, Pham and her spouse lived in a house located at 7116 Baird, Ft. Worth, Texas ("Ft. Worth Property"). In September 2004, the house burned down. By check dated October 13, 2004, Pham and her spouse received the sum of $110,248.08 in insurance proceeds. After payment of the mortgage on the Ft. Worth Property, Pham and her

spouse pocketed about $54,000. On or about April 13, 2005, Pham and her spouse sold the Ft. Worth Property, i.e. the land, for $22,000. Pham failed to disclose the loss from fire and the transfer of the Ft. Worth Property. Pham intends to file an amendment.

12. In or about February, 2004, Pham and her spouse purchased a dry-cleaning business known as Inwood Center Cleaners, which operated at 2311 E. Little York, Suite A, Houston, Texas. As consideration for the purchase, Pham and her spouse paid $500,000: (a) $150,000 in cash, $100,000 of which came from Pham and her spouse and $50,000 of which Pham and her spouse borrowed from Ly Phat, Toan V. Pham's nephew; (b) a $150,000 promissory note to Southwestern National Bank; (c) a $150,000 promissory note to Kim Truong; and (d) a $50,000 promissory note to Kenny Minh Nguyen. Subsequently, in or about April 2005, Pham and her spouse transferred their interest in Inwood Center Cleaners to Bill Nguyen. Bill Nguyen assumed the debts owed to Southwestern National Bank, Kim Truong and Kenny Minh Nguyen. Pham failed to disclose the transfer of Inwood Center Cleaners. Pham is amending the statement.

13. On or about May 1, 2005, Pham purchased a restaurant from Aphorn Vick. The restaurant was named Pho 4 Seasons and operated at 9402 Richmond Avenue, Houston, Texas. As consideration for the purchase, Pham paid $32,000, which came from loans obtained from Trang Nguyen of $10,000, Anna Nguyen of $20,000, and Jennifer Vong of $2,000. Subsequently, in or around February 2005, Pham closed Pho 4 Seasons and surrendered all assets, except cabinets, tables and chairs valued at $5,000, to the landlord. Pham failed to disclose her interest in the cabinets, tables and chairs, and the transfer of assets to the landlord. Pham intends to amend her schedules.

14. On or about June 7, 2004, Pham borrowed $15,000 ("Vong Debt") from Jennifer Vong. Subsequently, on or about February 18, 2005, Pham purchased an 18K Rolex watch from Ben Bridge Jewelers for $19,081.25. She obtained a cash advance of $4,000 using her Chase credit card account and placed that amount as a down payment on the purchase. Pham financed the balance through Ben Bridge Jewelers. On or about July 7, 2005, Pham gave Jennifer Vong the 18K Rolex watch in satisfaction of the Vong Debt. Pham failed to disclose the transfer of the Rolex watch and the payment of the Vong Debt. Pham intends to amend her disclosures.

15. On or about January 1, 2004, Pham borrowed $20,000 ("Leung Debt") from Anna Leung. Subsequently, in or about February 2005, Pham purchased a Cartier watch from Neiman Marcus for about $19,000. She obtained a cash advance of $4,000 using her American Express credit card account and placed that amount as a down payment on the purchase. Pham financed the balance through Neiman Marcus. On or about June 6, 2005, Pham gave Anna Leung the Cartier watch in satisfaction of the Leung Debt. Pham failed to disclose the transfer of the Cartier watch and the payment of the Leung Debt. Pham intends to amend her disclosure.

16. In or about January or February of 2005, Pham incurred gambling losses of $35,000 with credit obtained at various casinos. She played baccarat. Pham failed to disclose the gambling losses. Pham intends to amend her disclosure.

17.     In or about July 2005, Pham received a gift of $6,500 from Trung Pham, Hanh Gilbert, and Tot Tran, all family members. Pham used these monies to pay the attorney's fees of Lan Q. Ngo, bankruptcy counsel. Pham failed to disclose the gift. Pham intends to amend.

## Conclusions

**Section 727(a)(4)(A).**

There is overwhelming evidence that Pham's schedules and statements were materially inaccurate. Among other things, Pham failed to disclose the fire loss at her property in Fort Worth. Following the fire loss, Pham and her spouse received $54,000 in net settlement proceeds. This was not disclosed. Pham and her spouse invested $100,000 in cash in a dry cleaning business. They then transferred the dry cleaning business to Bill Nguyen. This transfer was not disclosed. Pham purchased two luxury watches (financed with nearly $40,000 of debt) and either returned or transferred the watches. These transactions involving luxury goods were not disclosed. Pham failed to disclose her purchase and loss of a restaurant. She failed to disclose her ownership of tables and chairs relating to the restaurant. Pham and her spouse had an undisclosed bank account at Southwestern National Bank that had been closed in 2005. Pham had large gambling losses that were not disclosed.

Pham amended some of her schedules and her statement of financial affairs. The amendments remained inaccurate. Further amendments—although intended in the future—have not yet been done.

Pham has offered no explanation for these material omissions. With no explanation offered by Pham, the Court concludes that the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth sufficient to support fraudulent intent under § 727(a)(4)(A). Accordingly, Pham's discharge must be denied under § 727(a)(4)(A).

**Sections 727(a)(3) and 727(a)(5)**

The Court need not address the issues raised under § 727(a)(3) and § 727(a)(5). Inasmuch as Pham's discharge is being denied for other reasons, the issues under § 727(a)(3) and § 727(a)(5) are now moot.

Signed at Houston, Texas, on October 10, 2006.

_____
MARVIN ISGUR
United States Bankruptcy Judge